APPEL, Justice
(dissenting).
I dissent.
This case involves a claim of sexual abuse made by a troubled sixteen year old, six years after the alleged crime. While there was some additional evidence on the periphery, this criminal proceeding was essentially a “he said, he said” case. The defendant, a school counselor, faced a mandatory minimum prison term of seventeen *568 and one-half years if convicted of the offense.
In this kind of case, nothing is more important than thorough, methodical, and strategic pretrial preparation of a plan to meet the testimony of the alleged victim. Yet, in this case, the trial court refused to grant even a brief continuance in the case after a highly significant four-page, single-spaced e-mail written by the alleged victim to his parents relating to the underlying events was produced only on the eve of trial.
I do not quarrel with the majority’s statement of facts and procedural issue or with its discussion of the standard of review of the issues posed in this case. In my view, however, the failure to grant a short continuance, under all the facts and circumstances of this case, was an abuse of discretion and a violation of the right to effective assistance of counsel. While the majority attempts to varnish the facts, there is no question in my view that this criminal defendant did not receive the assistance of aggressive, well-prepared counsel. I therefore dissent.
I. Abuse of Discretion.
I begin my discussion with recognizing that preparation is critically important to any criminal defense. As noted decades ago by Justice Sutherland in the Scotts-boro Case, perhaps the most critical period in a criminal proceeding is the period between arraignment and trial because “consultation, thorough-going investigation and preparation [are] vitally important.” Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 59-60, 77 L.Ed. 158, 164 (1932). The Standards for Criminal Justice of the American Bar Association requires defense counsel to “explore all avenues leading to facts relevant to the merits of the case.” ABA Standards for Criminal Justice: Prosecution and Defense Function 4-4.1 (3d ed.1993). According to one noted authority, “[t]he outcome of a criminal trial is astonishingly correlative to the thorough nature of defense counsel’s investigative preparation.” 1 Fred Lane, Goldstein Trial Technique § 4:9, at 4-66 to 4-67 (3rd ed.2011) [hereinafter Lane],
In particular, developing a plan for cross-examination of key witnesses requires “careful preparation and painstaking effort.” John A. Burgess, Persuasive Cross-Examination, 59 Am.Jur. Trials 1, 25 (1996). “Without preparation, cross-examination is like fishing through the ice. Something may be there, but the fisherman has no clue as to what is there, where it is, or which bait will attract it.” Id. at 23. Thorough preparation is essential in order not only to determine what questions to ask, but what questions not to ask. Id. at 27-28. Thus, effective cross-examination may win a case, but improper cross-examination may destroy a case. 4 Lane § 19:1, at 19-5.
As a result, when a defense lawyer indicates that he or she needs more time to prepare an effective defense based upon a highly relevant document produced on the eve of trial that relates to the likely testimony of a key prosecution witness, where there is no indication of gamesmanship in the request, and where there have been no prior continuances, the defense lawyer ordinarily should be given some leeway to develop his case.
A second factor weighing in favor of a continuance is the nature of the evidence in this case. Though there was some circumstantial evidence related to covering of windows of the office occupied by Clark at the elementary school where the crime allegedly occurred, this case was, for the most part, a “he said, he said” dispute. Developing a plan of cross-examination of the alleged victim is an especially critical part of this case. The mere fact that there *569 was an opportunity to cross-examine the defendant at trial based on a document disclosed on the eve of trial is not enough. When an important new document that goes to the heart of the issues in a case is disclosed on the eve of trial that directly relates to the expected testimony of the alleged victim about the crime, a defense request for a continuance to allow it to step back, carefully review the document, and recalibrate its approach to trial is entirely reasonable.
A third factor supporting a continuance is the germaneness of the e-mail to the issues at trial. While the material in a previous deposition of C.B. taken by the defense overlaps with the document to some extent, the e-mail is full of interesting phrasing and statements that amount to new evidence. Among other things, the letter contained statements or evidence that:
(1) C.B. may have stereotyped thinking that might have played a role in a claim made against a gay man (“[I] bet the slums was a hell of a time to drive through seeing [the] monkeys haha”);
(2) C.B. kept a journal including a “confession letter,” which might lead to additional evidence;
(3) C.B. considered his father, who had previously asked him about his relationship with Clark, a “badass mofo,” thereby suggesting that C.B. may have wanted to identify Clark in conformance to his father’s suggestions;
(4) showed strong desire on the part of C.B. to leave his residential school setting (“[It’s] bullshit being here” and characterizing the setting as a “shi-thole”);
(5) a general statement that youth in the residential facility lie about problems (kids in the residential school “lie about this shit”);
(6) followed by a specific admission by C.B. that “I’m constantly being [sic] to people about shit that happens”;
(7) a declaration that “you guys better get me out of this fucking place” and “[I] finally got the courage to put this out here and ... this is why [I] really [don’t] need to be here”);
(8) C.B. considered himself schizophrenic, paranoid, and that he had delusions, but his parents refused to have him tested;
(9) a statement by C.B. that a residential counselor did not seem to believe his statements regarding his mental health condition.
This is the kind of material that can make or break a criminal case where veracity of the alleged victim is a crucial contested matter.
A fourth factor in determining whether a continuance should be granted is the seriousness of the offense. Courts have repeatedly stated that the seriousness of the charge is a critical factor in determining whether there has been adequate preparation time. Wolfs v. Britton, 509 F.2d 304, 309 (8th Cir.1975); Rastrom v. Robbins, 440 F.2d 1251, 1255 (1st Cir.1971); Townsend v. Bomar, 351 F.2d 499, 502 (6th Cir.1965). In this case, the defendant was facing a twenty-five year sentence with a mandatory seventeen and one-half year term. In the exercise of discretion related to a continuance, the interest of the defendant in light of the severity of the potential sanction is a very weighty interest. This case did not involve parking tickets, but a serious criminal offense that carries a long prison term and justifiable community opprobrium.
A fifth factor is the inadequacy of alternative remedies. As has been noted, it is far preferable for the judge to monitor the adequacy of preparation before trial begins than to wait until a trial has occurred when *570 remedial action becomes more difficult. Monroe v. United States, 389 A.2d 811, 818-19 (D.C.1978). This is because it is very difficult to judge the impact of a decision after the fact as required under the test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whatever else might be said about Strickland, it is a very imperfect tool, requiring the court to reconstruct Humpty Dumpty, determine what should have happened at trial, and then speculate about what a jury would have done if the defense counsel put on a different case. We do our best in making such assessments, of course, but appellate court assessments are often highly speculative and impressionistic. Further, the assessments of seven experienced and trained judges on appeal may not necessarily mimic the common sense judgments of a jury in a criminal trial. As a result, it is better to eliminate potential problems with adequate representation up front prior to trial by being somewhat generous with respect to defense requests rather than to deal with resulting problems on the back end with the very blunt post hoc Strickland-type tools. See Simmons v. State Pub. Defender, 791 N.W.2d 69, 85 n. 9 (Iowa 2010).
I now turn to countervailing factors. As pointed out by the majority, the defense attorney did not provide specific details in his motion to continue other than the desire to conduct further investigation and perhaps reopen the deposition. However, the defense just received the e-mail a few minutes before the motion for a continuance was first heard and had no time to study it. While more review could have occurred over the weekend prior to the renewal of the motion the following Monday, defense counsel was no doubt preparing for the upcoming trial. In any event, the need for further time to plumb the significance of a four-page, single-spaced e-mail with lots of descriptors and color directly related to the central facts of the case ought to be obvious.
Further, the reasonableness of the request was obvious from the document itself. The five-page e-mail is obviously a very useful document. Yes, it covers some of the same ground revealed at the prior deposition of C.B. Yet, there are intriguing statements, an intriguing use of language, and lots of context that needed to be integrated into the defense case. Exploration of these features of the e-mail in a reopened deposition could well have led to a more effective cross-examination of C.B. at trial.
I do not deny that the lawyer in this case perhaps could have been somewhat more artful in alerting the court to the usefulness of the e-mail and could have been more specific, but the unedited e-mail was produced only at the beginning of the hearing on the motion to continue and, obviously, trial counsel had not had an opportunity to review it. While the motion was renewed on the following Monday, counsel still had very little time to sharpen the argument and was no doubt preparing for the upcoming trial.
Further, the fact that the e-mail was available for use at trial and that the defense attorney conducted cross-examination based upon the document does not resolve the problem. Without the benefit of a pretrial deposition on the e-mail, counsel may have been deterred from a more thorough exploration of the e-mail at trial for fear of experiencing the sting of asking one question too many. The mere appearance of in-court effectiveness simply cannot compensate for inadequate pretrial investigation. United States ex rel. Spencer v. Warden, 545 F.2d 21, 24-25 (7th Cir. 1976); 3 Wayne R. LaFave et al., Criminal Procedure § 11.7(d), at 821 (3d *571 ed.2007) (stating the requirement of a fact-specific finding of ineffectiveness allows “too many cases of incompetency to survive judicial review, as counsel’s inadequacies are often hidden in investigative failure and prejudice to the defendant takes forms that are often imperceptible”). Indeed, proof of the prejudice from lack of adequate preparation may well be absent from the record precisely because of the lack of preparation. See United States v. Tucker, 716 F.2d 576, 593 (9th Cir.1988) (stating when pretrial investigation and preparation is inadequate, the record is necessarily incomplete as to extent of prejudice).
It is, of course, true that a brief continuance would impose some burdens on the parties and the witnesses. However, this was not a case involving dozens of witnesses who were subpoenaed to appear on a given date or where expert witnesses were traveling from afar. A brief continuance would have posed almost very little burden on the prosecution and third parties. Indeed, to the extent the defense sought to depose C.B., the deposition could have occurred over the weekend and thus eliminated the need for a continuance.
In light of the nature of the late disclosure, the critical nature of adequate trial preparation to an effective defense, the severity of the potential sanction involved, the lack of alternative post hoc remedy, and the lack of substantial prejudice to the State, I think it clear that it was an abuse of discretion for the district court to deny even a brief continuance in this case.
II. Violation of Right to Counsel.
Clark also raises a claim that the denial of the motion to continue violated his rights to due process under the Fifth and Sixth Amendments to the United States Constitution and under article I, sections 9 and 10 of the Iowa Constitution.
In State v. Gambell, 262 N.W.2d 792 (Iowa 1978), we considered whether constitutional error occurred in a murder trial where a deposition of the State’s witnesses were taken by tape recording rather than stenographic means. Under the circumstances, the accuracy and the trustworthiness of the tapes was open to question. The court concluded that by having the depositions only on tape rather than in stenographic form, the court “handicapped defendant’s counsel and precluded effective assistance of counsel to the defendant” as required by the Fourteenth Amendment and article I, sections 9 and 10 of the Iowa Constitution (due process and effective assistance of counsel). Gambell, 262 N.W.2d at 795.
In support of its decision, the Gambell court cited State v. Williams, 207 N.W.2d 98 (Iowa 1973). In that case, the court emphasized that failure to allow counsel to adequately prepare for trial does not satisfy due process. Williams, 207 N.W.2d at 104. In Williams, however, the defense counsel made a naked claim that he needed an investigator without suggesting the subject matter of inquiry and making it impossible for the court to determine necessity as required by Iowa statutes. Id. at 105-06. Here, there was no statutory obstacle to granting the relief sought, and, in any event, counsel stated he needed to follow up on information contained in a specific document.
Surely this case is as problematic as Gambell. In Gambell, by providing only for tape recordings of depositions, it was harder for defense counsel to prepare for cross-examination and to conduct cross-examination at trial. Gambell, 262 N.W.2d at 795. Here, as shown above, the problems are in some ways even more acute as counsel did not have an opportunity to explore a number of important statements contained in the e-mail. I would therefore *572 find a due process violation under article I, section 9 of the Iowa Constitution.
I recognize that the majority does not preclude a potential postconviction relief claim based on ineffective assistance of counsel. But I fear this will be a catch-22 proposition. The claim that counsel was unable to adequately prepare for trial is rejected by the majority, at least in part, for lack of specificity, but then, in a post-conviction proceeding, the court may find that counsel’s failure was reasonable given the time constraints and, as a result, the first prong of Strickland has not been met. Or, in the alternative, it will gloss over the problems and simply conclude that there was no showing of concrete prejudice.
III. Conclusion.
For the above reasons, I would reverse the judgment of the district court and remand the case for a new trial.
HECHT, J., joins this dissent.